Mr. Justice Merrick
delivered the opinion of the Court:
In the case of Millie Thomas against Holtzman, or, as it is otherwise entitled, Eliza Queen and others against Holtzman, since Eliza Queen and others came in by bill of revivor on thet decease of Millie Thomas, for the purpose of determining the question of partition as between the estate of Millie Thomas and Holtzman, touching a certain lot of ground in the city of Washington, it was objected by the respondent in equity that Eliza Queen and the others, now seeking to be made parties to the bill of revivor, were not the legitimate children of Millie Thomas.
It appears in the proof that Millie Thomas had for her husband one Henry Queen, a free colored man, and that she, being a slave, lived with him as her husband, recognizing the relation of husband and wife between them, with the consent of her master; and during that marriage two of these plaintiffs were the fruit of the union. The first husband died, and then, in a similar manner, she associated herself with another man by the name of Thomas, and lived with him, recognizing him as her husband, and that as the fruit of that union two other children were born. Her second husband subsequently deserted her at about the outbreak of the war and never returned, and, so far as it is known, is dead. These four children, the fruit of these two marriages, claim to be the heirs at law of Millie Thomas.
It is objected on the part of the respondent in this case that the‘children of these marriages are not legitimate, first, because under the interpretation of the laws of Maryland, including the Actof 1777, which recognize the capacity of a clergyman to perform the rites of marriage with the consent of the master, there was in point of fact no marriage; in other words, that by the law of Maryland recognizing *66 the possibility of a legal marriage under such circumstances in facie ecclesise, with the consent of the master, any other marriage between slaves was not regarded as a marriage so as to legitimate the issue; secondly, that the act of Congress of February 6, 1879, which does legitimate or professes to legitimate all the issue of such marriages, is unconstitutional and void, because it makes a discrimination between persons of different races and different colors.
In the first place it is not at all apparent that it ever was the law that a marriage in facie ecclesise, was necessary for the purpose of legitimating the issue. It is true that the Court of Appeals of Maryland in the last four or five years has decided that such was the law; but that decision is not binding upon us. It is laid down by Blackstone that a marriage per verba de presentí without the intervention of a clergyman is a legitimate marriage. And both Story and Kent say, that according to the universal understanding in this country a marriage per verba de presentí, without the intervention of a clergyman, followed by cohabitation, makes a legitimate marriage.
In the year 1844, that question was greatly contested in the case of The Queen vs. Mills, in the House of Lords in England, and bj? a'divided court the judgment of the Irish tribunal was sustained, which had affirmed that a marriage in facie ecclesise was necessary- to give legitimacy to the issue. That was, as we have said, by a divided court; and the opinion of Lord Campbell in the case, one of the ablest opinions that has ever been written, is a most powerful vindication of the ancient doctrine that a marriage, to be a valid marriage, so as to legitimate the issue, does not require the presence of a clergyman. He cites with marked emphasis and approbation the authority of Kent and Story as to the common law on this subject, certainly as it was uniformly understood in America.
It is not necessary for us to decide that question at this time. What has be‘en said is merely by way of suggestion *67 in order to repel the conclusion that it has been definitively settled that the presence of a clergyman is necessary to validate a marriage so far as the legitimacy of the issue is concerned. It is sufficient for this court to rely, for the decision of the present cause-, upon the act of Congress of 1879, which was made for the express purpose of relieving the unfortunate members of the late servile race from the consequences entailed upon them by their condition of servitude. The act of Congress is so emphatic and so comprehensive that it leaves no room for argument upon the question of the validity of the marriage now before the court. It provides:
“ That the issue of any marriage of colored persons, contracted and entered into, according to any custom prevailing at the time in any of the States wherein the same occurred, shall, for all purposes of descent and inheritance, and the transmission of both real and personal property in the District of Columbia, be deemed and held to be legitimate and capable of inheriting and transmitting inheritance, and taking as next of kin and distributees according to law from and to their parents, or either of them, and from and to those from whom such parents, or either of them, may inherit or transmit inheritance, anything in the laws of such State to the contrary notwithstanding. 20 Stat. at Large, 282.
That is as broad and comprehensive as language can make it, stating in terms that wherever, according to a custom prevailing at the time the parties entered into and recognized themselves as occupying the relation of man and wife, it is sufficient for the purpose of legitimatizing the issue of colored persons. It was eminently proper and humane and just that the law should be made, and this court is unwilling to intimate the possibility of a doubt of the validity of the law in any respect. Certainly the suggestion that it violates any of the terms of the recent amendments of the Constitution of the United States can *68 have no warrant or force in reason or law. The proof having been adequate to show in this case — without reciting it in delivering this opinion — that these people did live in the relation of husband and wife, according to a custom then prevalent, and were recognized according to that custom as husband and wife, is sufficient to establish the legitimacy of the issue for the purposes of this cause.
We will only add, inasmuch as the defendant in the case doe's not seem to have any interest at all in the title which they were vindicating, that his objection to their title seems rather a litigious contention than one justly set up for the purpose of vindicating any rights of his own, that the court would not be disposed to scrutinize very closely the weight of the testimony introduced in this particular 5 but it is sufficent, and the court thinks that heirship has been established so as to entitle the plaintiffs to maintain their bill for partition in the premises.